STATE DEPARTMENT OF PUBLIC WELFARE OF the STATE OF TEXAS et al., Plaintiffs-Appellees-Cross Appellants,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, et al., Defendants-Appellants-Cross Appellees.

No. 75–1953.

United States Court of Appeals, Fifth Circuit.

July 25, 1977.

Rehearing and Rehearing En Banc Denied Sept. 23, 1977.

John E. Clark, U. S. Atty., San Antonio, Tex., Robert E. Kopp, Michael H. Stein, Rex E. Lee, Asst. Atty. Gen., Dept. of Justice, Civ. Div., Appellate Section, Washington D. C., for Joseph A. Califano, Jr., et al.

John L. Hill, Atty. Gen., Frank C. Cooksey, Asst. Atty. Gen., David M. Kendall, Jr., First Asst. Atty. Gen., Austin, Texas, for Dept. of Public Welfare et al.

Before AINSWORTH and MORGAN, Circuit Judges, and LYNNE *, District Judge.

AINSWORTH, Circuit Judge:

This action arose when the United States Department of Health, Education, and Welfare refused to pay a Texas State Department of Public Welfare claim for $92 million in matching funds under provisions of the Social Security Act, 42 U.S.C. § 301 *et seq.* Texas Department of Public Welfare brought this action in the district court contesting HEW's refusal to pay its claim. The district court ordered HEW to conduct a full administrative hearing to reconsider its refusal to pay, but found that it lacked jurisdiction to order HEW to pay Texas the claimed $92 million pending the outcome of reconsideration. We agree with the district court that the dispute should be returned to HEW for a full administrative hearing, and decline to order payment to Texas pending the outcome. Our reasons differ somewhat from those relied upon by the district court.

* Senior District Judge of the Northern District of Alabama, sitting by designation.

Congress has made available under the Social Security Act matching funds to the states for public assistance programs operated in compliance with federal requirements. *See, e. g.*, 42 U.S.C. §§ 301, 601, 1201, 1351. In order to qualify for the matching funds each state must obtain HEW approval of a statewide plan for furnishing appropriate services,[1] and must designate a single state agency to administer the plan. *See* 42 U.S.C. §§ 302, 602, 1202, 1352; 45 C.F.R. §§ 201.2 to 201.7. The Secretary of HEW reviews the proposed plans to determine whether they conform with federal requirements. *See, e. g.*, 42 U.S.C. §§ 302, 602, 1202, 1352; 45 C.F.R. §§ 201.2, 201.3. The Secretary must approve plans which conform with these requirements. If the Secretary finds that a plan does not conform to federal requirements, and refuses approval, the affected state may request a plan-conformity hearing pursuant to 42 U.S.C. § 1316(a); *see* 45 C.F.R. § 201.4. Section 1316(a) provides for a hearing within certain time limits.[2] Following the hearing the Secretary's determination is directly reviewable in the court of appeals, 42 U.S.C. § 1316(a)(3).

In 1971, the Texas Department of Public Welfare [DPW] submitted to HEW a public service plan pursuant to the provisions of the Act under titles I (the aged, 42 U.S.C. § 301 *et seq.*), IV (dependent children, 42 U.S.C. § 601 *et seq.*), X (the blind, 42 U.S.C. § 1201 *et seq.*), and XIV (the disabled, 42 U.S.C. § 1351 *et seq.*). The plan was approved and became effective on July 1, 1971.

The federal share of the state's expenditures under a public service plan is computed quarterly by HEW in the following manner:

The Secretary of Health, Education, and Welfare shall, prior to the beginning of each quarter, estimate the amount to be paid to the State for such quarter under the provisions of subsection (a) of this section, such estimate to be based on (A) a report filed by the State containing its estimate of the total sum to be expended in such quarter in accordance with the provisions of such subsection, and stating the amount appropriated or

1. 42 U.S.C. § 301 provides in pertinent part:
Authorization of appropriations

. . . . .

The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary of Health, Education, and Welfare (hereinafter referred to as the "Secretary"), State plans for old-age assistance, or for medical assistance for the aged, or for old-age assistance and medical assistance for the aged.
Sections 601, 1201 and 1351 are substantially similar except that they provide for assistance to, respectively, dependent children, the blind and the disabled. This pattern of corresponding section numbers is maintained throughout the statute.

2. 42 U.S.C. § 1316(a) provides in pertinent part:
(a)(1) Whenever a State plan is submitted to the Secretary by a State for approval under subchapter I [the aged], . . . X [the blind], XIV [the disabled] . . . of this chapter, or part A of subchapter IV of this chapter [dependent children], he shall, not later than 90 days after the date the plan is submitted to him, make a determination as to whether it conforms to the requirements for approval under such subchapter. The 90-day period provided herein may be extended by

written agreement of the Secretary and the affected State.
(2) Any State dissatisfied with a determination of the Secretary under paragraph (1) with respect to any plan may, within 60 days after it has been notified of such determination, file a petition with the Secretary for reconsideration of the issue of whether such plan conforms to the requirements for approval under such subchapter. Within 30 days after receipt of such a petition, the Secretary shall notify the State of the time and place at which a hearing will be held for the purpose of reconsidering such issue. Such hearing shall be held not less than 20 days nor more than 60 days after the date notice of such hearing is furnished to such State, unless the Secretary and such State agree in writing to holding the hearing at another time. The Secretary shall affirm, modify, or reverse his original determination within 60 days of the conclusion of the hearing.
(3) Any State which is dissatisfied with a final determination made by the Secretary on such a reconsideration . . . may, within 60 days after it has been notified of such determination, file with the United States court of appeals for the circuit in which such State is located a petition for review of such determination.

made available by the State and its political subdivisions for such expenditures in such quarter, and if such amount is less than the State's proportionate share of the total sum of such estimated expenditures, the source or sources from which the difference is expected to be derived, (B) records showing the number of aged individuals in the State, and (C) such other investigation as the Secretary may find necessary.

(2) The Secretary of Health, Education, and Welfare shall then certify to the Secretary of the Treasury the amount so estimated by the Secretary of Health, Education, and Welfare, (A) reduced or increased, as the case may be, by any sum by which it finds that its estimate for any prior quarter was greater or less than the amount which should have been paid to the State under subsection (a) of this section for such quarter  .  .  . .

42 U.S.C. § 303(b)(1) and (2); *see id.* §§ 603(b), 1203(b), 1353(b); 45 C.F.R. § 201.-13(a).

3. The disallowance procedure applies to expenditures which have already been made by the State under its plan, and is implemented by means of audit exceptions. 45 C.F.R. § 201.-13(a). Section 201.13(a) also provides:

> Expenditures in which it is found the Federal Government may not participate and which are not properly adjusted through the State's claim will be deducted from subsequent grants made to the State agency.

4. 45 C.F.R. § 201.14(d) provides at length for reconsideration procedures. Subsection (7) provides in part that "the State may obtain, upon request to him, a conference with the Administrator [of Social and Rehabilitation Service], during which it may discuss with the Administrator its position on the issues." The regulation provides for no further hearing and for no judicial review. This regulation implements 42 U.S.C. § 1316(d), which provides:

> (d) Whenever the Secretary determines that any item or class of items on account of which Federal financial participation is claimed under subchapter I, VI, XIV, XVI, or XIX, XX of this chapter, or part A of subchapter IV of this chapter, shall be disallowed for such participation, the State shall be entitled to and upon request shall receive a reconsideration of the disallowance.

The statutory history of section 1316(d), as quoted below, indicates that the section's sponsors recommended against judicial review of disallowances. 111 Cong.Rec. 3068 (remarks of Sen. Javits, Feb. 18, 1965).

When the Secretary reduces a state's estimate under this provision, the reduction is termed a "disallowance" of a state expenditure. *See* 45 C.F.R. §§ 201.10 to 201.14.[3] States are notified by letter from the regional commissioner of HEW that federal funds for the disallowed expenditure are being withheld. 45 C.F.R. § 201.14(b). The state may request reconsideration of the disallowance under the provisions of 42 U.S.C. § 1316(d); the reconsideration procedure does not provide for a hearing or for judicial review of the reconsideration determination. *See* 42 U.S.C. § 1316(d); 45 C.F.R. § 201.14.[4]

State plans which are in operation are scrutinized by HEW to ensure continuing compliance with the requirements of sections 302, 602, 1202 and 1352, and that no "prohibited requirements" are imposed by the state under the plans. 42 U.S.C. §§ 304, 604, 1204, 1354.[5] When it appears to the

5. 42 U.S.C. § 304 provides:

> In the case of any State plan which has been approved under this subchapter by the Secretary of Health, Education, and Welfare, if the Secretary, after reasonable notice and opportunity for hearing to the State agency administering or supervising the administration of such plan, finds—
>
> (1) that the plan has been so changed as to impose any age, residence, or citizenship requirement prohibited by section 302(b) of this title, or that in the administration of the plan any such prohibited requirement is imposed, with the knowledge of such State agency, in a substantial number of cases; or
>
> (2) that in the administration of the plan there is a failure to comply substantially with any provision required by section 302(a) of this title to be included in the plan;
>
> the Secretary of Health, Education, and Welfare shall notify such State agency that further payments will not be made to the State (or, in his discretion, that payments will be limited to categories under or parts of the State plan not affected by such failure) until the Secretary is satisfied that such prohibited requirement is no longer so imposed, and that there is no longer any such failure to comply. Until he is so satisfied he shall make no further payments to such State (or shall limit payments to categories under or parts of the State plan not affected by such failure).

Secretary that the state plan is being operated in noncompliance with these regulations, he must give the state agency "reasonable notice and opportunity for hearing" to evaluate the operation of the plan. States dissatisfied with the outcome of such compliance hearings may petition for direct review in the court of appeals, 42 U.S.C. §§ 304, 604, 1204, 1354, 1316(a)(3). If it is then determined that the state plan is in noncompliance with federal regulations, the Secretary must terminate federal participation in the plan until the noncompliance is cured. 42 U.S.C. §§ 304, 604, 1204, 1354.

On July 26, 1972, Texas filed its amended expenditure report for the fourth quarter of fiscal 1972. The report included a retroactive claim for more than $91 million (subsequently amended to $92,731,245) as the federal share of expenditures for public services provided by various Texas state agencies during the first three quarters of fiscal 1972. Texas DPW asserted that it had purchased these services from the various agencies during fiscal 1972 pursuant to the plan in effect as of July 1, 1971. HEW denied the $92 million claim, classifying the denial as a disallowance. Texas DPW then asked for and received administrative reconsideration of the denial under section 1316(d); the denial was confirmed. Thereafter, Texas DPW brought this suit in the district court, asking the court to declare HEW's denial of the claim illegal, to return the claim for reconsideration in a full agency hearing, and to order HEW to pay Texas DPW the claimed $92 million pending the reconsideration. The district court determined that HEW had erred in classifying its denial of the Texas claim as a disallowance. The court found that the denial was in effect a finding that Texas DPW had "failed to comply substantially with applicable federal regulations" and ordered that the Secretary provide Texas DPW "reasonable notice and opportunity for hearing as provided in 42 U.S.C. §§ 304, 604, 1204 and 1354," which are the statutory provisions for noncompliance reconsideration. The

court refused, however, to order HEW to pay the claimed $92 million to Texas on grounds that such an order under the circumstances would be an "inappropriate" exercise of the court's power of mandamus, and that such an exercise was "implicitly precluded by the Tucker Act." Both HEW and Texas DPW appealed the district court ruling.

On appeal Texas DPW seeks to preserve the district court's classification of HEW's denial of the $92 million claim as a finding of noncompliance. However, Texas DPW seeks reversal of the district court's refusal to order HEW to pay Texas DPW the claimed amount pending outcome of the noncompliance proceedings on remand. HEW argues on appeal that its denial of the $92 million claim was a disallowance. HEW asks that we reinstate this classification, one effect of which would be the withholding of payment of the claimed amount pending further proceedings concerning Texas DPW's entitlement to the funds. HEW argues that if return of the case to HEW is necessary, it should be for further reconsideration of its disallowance of the claim under new reconsideration procedures promulgated pursuant to section 1316(d), set out at 45 C.F.R. § 201.14. These new procedures do not provide for a formal hearing.

█ It is, therefore, necessary to decide what is the proper classification of HEW's denial of the Texas claim. The unusual circumstances of this case do not fall neatly into any usual classification. After reviewing the Act, the statutory history, and the circumstances of the claim, we have determined that the purposes of the Act and the equities are best served by treating this case as a plan-conformity dispute under section 1316(a), and returning the case to HEW for reconsideration in a formal hearing under that section.

The record reveals that HEW's reasons for denying the Texas DPW claim amount

The provisions of sections 604, 1204 and 1354 are similar to those of section 304. Section 1316(a)(3) provides for direct review in the court of appeals of final determinations of the Secretary made under these sections.

to a finding of nonconformity with Texas DPW's approved plan and with federal requirements. In evaluating the $92 million claim, HEW conducted a regional office review of the state-claimed expenditure. The regional office report, which appears in the record, states, in its "Summary of Findings,"

1. A substantial part of the social services claimed was not covered or purchasable under an approved State Plan nor were purchases of service contracts in place during the period covered by the claim. See page 11 for details.

2. The State Title I [the aged], IV–A [dependent children], X [the blind] and XIV [the disabled] plans were not in operation with respect to the claimed expenditures during FY 1972

. . . .

Francis D. DeGeorge, an HEW official who worked closely with the Texas DPW claim and who notified Texas DPW of the $92 million reduction in its claimed expenditures, stated in his deposition, "We were trying to make a judgment as to whether, in effect, there was a State plan." The agency determined, he said, "that there was, for the purposes of this decision, no State plan."

The record also contains a letter from HEW to Raymond W. Vowell, Commissioner of Texas DPW, explaining at length the reasons for denial of the $92 million claim. According to the letter "the question to be answered in relation to the claims submitted by the State is whether they were furnished under the State's approved title I, IV, X and XIV plans." The letter concludes that "the claims are not proper and allowable under the provisions of your State plan and the law and regulations."

These examples show quite persuasively that the reason for the denial of the Texas claim was that the claimed expenditures by the state lay outside the scope of the approved plan under which the claim was made, and in some cases did not conform with federal requirements. In short, the large, retroactive Texas DPW claim reflected, in the eyes of HEW, attempts by Texas DPW to make material changes in the operation of the Texas public service plan.

According to HEW regulations, state plans must provide for amendment "whenever necessary to reflect new or revised Federal statutes or regulations, or material change in any phase of State law, organization, policy or State agency operation." 45 C.F.R. § 205.5(a). The Act provides that amendments to state plans may be considered by HEW through the plan-conformity procedures set out at 42 U.S.C. § 1316(a), thus receiving a full administrative agency hearing, if the state so requests. 42 U.S.C. § 1316(b). Texas, of course, has repeatedly requested a full administrative hearing to decide the issues in this dispute. We find that the plan-conformity procedure in section 1316(a) is the one best suited for reconsideration of Texas DPW's claim, which HEW views as constituting an attempted change in Texas' approved state plan.

█ The propriety in this case of the plan-conformity procedure, including a full hearing, is supported by the legislative history of the judicial review provisions of the 1965 amendments to the Act. The history shows that the major reason for providing judicial review of HEW decisions concerning state public service plans was to put "the States on a more equal basis with the Federal Government in the administration of the public assistance program" and thereby reduce intergovernmental friction. 111 Cong.Rec. 5048 (remarks of Cong. Dwyer, Mar. 15, 1965). As Senator Jacob Javits stated,

The [Advisory Commission on Intergovernmental Relations] believes that the most satisfactory approach to providing judicial review of administrative decisions of the Secretary is to establish a procedure whereby in cases of disagreement between the State agency and the Secretary, court review would occur prior to actual implementation of a proposed change in the State's existing approved plan. This would avoid the necessity for

withholding or recouping Federal funds. Court review would involve a determination of whether an amendment to the existing plan proposed by the State or a new administrative requirement promulgated by the Federal agency conformed with the intent of the Federal statute. Under such procedure there would be no disruption in the operation of the existing approved State plan until agreement between the parties was reached or the court decision was rendered.

.    .    .    .    .

Some States and local officials believe that some form of judicial review should encompass all aspects of the public assistance programs, including matching issues or audit exceptions. However, the much greater concern is for review of decisions regarding plan-conformity issues. The Commission believes that to involve audit exceptions or issues other than those of plan conformity in the judicial review process would create many additional problems.

111 Cong.Rec. 3068 (remarks of Sen. Javits, Feb. 18, 1965).

The policies expressed by Senator Javits also support treatment of the Texas claim as a plan-conformity issue. Availability of a full agency hearing followed by judicial review puts the state on a "more equal basis" with HEW than does summary disallowance reconsideration through section 1316(d), which provides for no hearing and no judicial review. At the same time, section 1316(a) provisions do not require payment of the claim to Texas pending review. This avoids possible later problems of recoupment of the funds, which the drafters of the amendment intended to avoid. Texas DPW will not be adversely affected by withholding the funds because the services for which the funds are claimed have already been provided; no existing program will be disrupted by lack of funds. Finally, the time requirements of section 1316(a) ensure the most expeditious resolution of this dispute, as well as the briefest possible occupation of HEW resources.

In sum, we find that the dispute in this case results largely from HEW's attempt to deal in a summary manner with a substantial Texas DPW claim for expenditures for services which HEW considered to differ materially from those approved as part of Texas DPW's approved state plan. In view of the statutory history of the judicial review amendments of the Act, we conclude that the dispute should be resolved by means of the procedure established by Congress for dealing with plan-conformity issues, 42 U.S.C. § 1316(a).

Accordingly, the district court's classification of the denial of the Texas DPW $92 million claim as a noncompliance action is reversed. The order of the district court is modified to provide for reconsideration of the Texas claim under the plan-conformity procedures of 42 U.S.C. § 1316(a). The 30-day time period during which the Secretary is to give notice to the state of the hearing date is to run from the effective date of this order.

AFFIRMED in part; MODIFIED in part.