GEORGIA DEPARTMENT OF MEDI-
CAL ASSISTANCE, Petitioner,

v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
and Margaret Heckler, Secretary, Re-
spondent.

No. 83–8230.

United States Court of Appeals,
Eleventh Circuit.

June 27, 1983.

Mark H. Cohen, Asst. Atty. Gen., Atlanta,
Ga., for petitioner.

Shelley B. Slafkes, Asst. Regional Atty.,
Atlanta, Ga., for respondent.

Before GODBOLD, Chief Judge, FAY
and CLARK, Circuit Judges.

BY THE COURT:

This Medicaid case involves an effort by
the Georgia Department of Medical Assist-
ance (GDMA) to obtain reimbursement
from the U.S. Department of Health and
Human Services (HHS) for funds GDMA
spent on abortion services for medicaid pa-
tients pursuant to a court order.

In June of 1979, a federal district court
invalidated GDMA's regulations placing
tight restrictions on medicaid reimburse-
ment for abortions. *Doe v. Busbee,* 471
F.Supp. 1326 (N.D.Ga.1979). The district
court held that while the Hyde Amendment
precluded federal funding of most abortion
services, Title XIX of the Social Security
Act nevertheless required states to fund all
medically necessary abortions. GDMA ac-
cordingly funded abortion services for med-
icaid patients until January of 1981 when
the district court dissolved its injunction in
light of the Supreme Court's decision in
*Harris v. McRae,* 448 U.S. 297, 100 S.Ct.
2671, 65 L.Ed.2d 784 (1980). In *Harris* the
Court held that Title XIX does not obligate
the states to fund abortion services for
which federal financial assistance is pre-
cluded by the Hyde Amendment.

HHS subsequently refused to reimburse
GDMA for the cost of complying with the
district court's short-lived injunction. It
"disallowed" the $167,392 of GDMA's med-
icaid expenses attributable to abortion serv-
ices, finding that the Hyde Amendment

precluded federal assistance. In conformity with the procedures governing "disallowances", *see* 42 U.S.C.A. § 1316(d) (West Supp.1983); 45 C.F.R. § 201.13 (1982), GDMA asked the Departmental Grant Appeals Board to reconsider HHS's decision. The Board upheld the decision.

Because there is some uncertainty about whether this court or the district court has initial jurisdiction in the matter, GDMA filed petitions for review in both the district court and this court. GDMA, asserting its belief that the district court has initial jurisdiction, moves to stay proceedings in this court pending the outcome of the district court's review. HHS agrees with GDMA's belief that the district court has initial jurisdiction but has filed a motion to dismiss the appeal for want of jurisdiction. For reasons of consistency [1] and economy [2] we first decide the jurisdictional issue. Concluding that we lack jurisdiction, we dismiss the appeal.

This court's jurisdiction hinges on whether HHS's decision is properly characterized as a "disallowance" or a finding of "noncompliance". While the courts of appeals have initial jurisdiction over a noncompliance determination, 42 U.S.C.A. §§ 1316(a), 1396c (1974 & West Supp.1983), the statute does not provide for direct review in the courts of appeals in the case of disallowances. 42 U.S.C.A. § 1316(d) (West Supp. 1983). In fact, whether Congress intended to vest district courts with jurisdiction to review disallowance determinations remains somewhat unsettled. *See* 111 Cong.Rec. 3068 (1965) (remarks of Sen Javits),[3] *State Department of Public Welfare v. Califano,* 556 F.2d 326, 329 & n. 4 (5th Cir.1977)

(stating in dicta that the "statutory history ... indicates that the section's sponsors recommended against judicial review of disallowances"). *Compare Medical Services Administration v. U.S.,* 590 F.2d 135 (5th Cir.1979) (declining to decide issue); *Massachusetts v. HHS,* 698 F.2d 22 (1st Cir.1983) (same); *New Jersey v. HHS,* 670 F.2d 1284, 1290 n. 11 (3d Cir.1982) (same) *with Illinois v. Schweiker,* 707 F.2d 273 at 277–78 (7th Cir.1983) (district courts have jurisdiction to review disallowance); *Washington v. Schweiker,* slip op. (9th Cir.1981) (same); *County of Alameda v. Weinberger,* 520 F.2d 344 (9th Cir.1975) (same); *Georgia v. Califano,* 446 F.Supp. 404 (N.D.Ga.1977) (same).

A "disallowance", in archetypal form, involves technical audit dispute concerning specific and isolated payments. *See* H.Rep.No. 213, 89th Cong., 1st Sess. 132 (1965) U.S.Code Cong. & Admin.News 1965, p. 1943 ("disallowances usually take the form of audit exceptions"). *See also Medical Services Administration, supra* at 136; *Massachusetts, supra* at 26–27; *New Jersey v. HHS,* 670 F.2d 1262, 1275 (3d Cir.1982) (*New Jersey I*). In contrast, the classic case of "noncompliance" involves a determination that the state's overall rate methodology has been so changed that it no longer complies with federal requirements or that the state's administration of its plan violates federal requirements. *See* 42 U.S.C.A. § 1396c. Administrative determinations often do not fall neatly into one distinct category or the other. In such cases courts have resorted to a variety of different tests to aid them in distinguishing between disallowances and noncompliance determinations.[4] Our cases have drawn the distinc-

---

1. It would be anomalous to act on the stay without first concluding that we have jurisdiction.

2. Proceedings in the district court would be needlessly wasted were this court to refrain from deciding the jurisdictional issue now only to conclude upon reviewing the district court's decision that the matter is properly treated as a "noncompliance" determination initially reviewable in this court.

3. Senator Javits stated:

Some States and local officials believe that some form of judicial review should encompass all aspects of the public assistance programs, including matching issues or audit exceptions. However, the much greater concern is for review of decisions regarding plan-conformity issues. The Commission believes that to involve audit exceptions or issues other than those of plan conformity in the judicial review process would create many additional problems.

4. The First, Third and Seventh Circuits have all devised different tests. The Seventh Circuit,

tion with reference to the character of the administrative determination, viewed in light of the policies underlying § 1316(a)'s provision for direct review in the court of appeals. *See Medical Services Administration, supra; State Department of Public Welfare, supra.*[5]

HHS's finding here contains elements of both a disallowance and a noncompliance determination. As with a noncompliance determination, this dispute does not center on the accuracy of HHS's audit; the parties do not disagree on the amount GDMA spent on abortion services pursuant to the court order. Rather, the nature of the controversy is primarily legal, focusing on HHS's alleged obligation to reimburse states for payments made in complying with a district court order that is ultimately overturned. *See New Jersey I, supra* at 1273. Additionally, GDMA, in complying with the district court's order, can be viewed as amending its plan to provide reimbursement for abortion services. HHS's decision to deny reimbursement to GDMA can accordingly be characterized as a finding that GDMA's "amendment", insofar as it contemplated federal financial assistance, did not comply with federal law.[6]

■ HHS's determination also possesses characteristics indicative of a disallowance. HHS, in processing GDMA's claim, has used disallowance procedures rather than the more formal noncompliance procedures.[7]

reasoning that a jurisdictional test must draw a "clean line", has held that it will defer to the Secretary's treatment of the matter as a disallowance or noncompliance determination. *Illinois, supra* at 628. The First and Third Circuits have adopted what the Seventh Circuit described as the "functional" approach. The First Circuit, for example, employs a three factor test:

First, we consider whether the matter might have fit comfortably within the statutory language of § 1396c, as a determination of noncompliance, if the Secretary had chosen that route. Second, we ask whether it is of such a character, by reason of its generality and importance, as to point towards inclusion under the compliance rather than the disallowance rubric. And, last, we look to the Secretary's chosen procedures and label—not as definitive but as entitled to some respect. *Massachusetts, supra* at 27. The Third Circuit similarly bases its determination on an "independent evaluation of the underlying substance of the dispute." *New Jersey I, supra* at 1272.

5. In *State Department of Public Welfare,* Texas filed a claim for approximately $92,000,000 with HEW under the Social Security Act. HEW denied the claim, processing it as a disallowance. The former Fifth Circuit rejected HEW's classification of the claim, stating:

After reviewing the Act, the statutory history, and the circumstances of the claim, we have determined that the purposes of the Act and the equities are best served by treating this case as a plan-conformity dispute under § 1316(a) . . . .
556 F.2d at 326.
In *Medical Services Administration,* the court did not need to resort to policy analysis because there the underlying character of the administrative determination was clear. The court concluded that "basically this case concerns an audit dispute" and characterized HEW's determination as a disallowance. 590 F.2d at 136.

6. Read literally, the statute limits a finding of noncompliance to the situation where the state, in amending or administering its plans, violates one of the requirements articulated in 42 U.S.C.A. § 1396. Under this definition of "noncompliance", HHS's arguable determination that GDMA's plan, as "amended" by the court order, is inconsistent with the Hyde Amendment would not qualify as a finding of noncompliance. HHS's regulations, however, reject this literal definition of noncompliance, stating "[a] question of noncompliance . . . may arise from . . . the failure of the state in practice to comply with a Federal requirement . . . ." 45 C.F.R. § 201.6(a).
Because we conclude on other grounds that HHS's determination is properly categorized as a disallowance, we need not decide whether a finding of noncompliance may involve a federal requirement not stated in § 1396. *See Massachusetts, supra* at 28 & n. 5.

7. Where the state objects to a noncompliance determination, the statute requires that the Secretary hold a reconsideration hearing. 42 U.S.C.A. § 1316(a)(2). *See also* 45 C.F.R. § 201.4 (1982). As interpreted in the Secretary's regulations, the hearing is a relatively formal, adversarial proceeding. *See* 45 C.F.R. § 213 (1982). The Federal Rules of Civil Procedure, for instance, govern discovery. The state has a right to counsel and may call and cross-examine witnesses. The record of the hearing constitutes the exclusive record for decision.
In contrast, the statute does not entitle the state to a hearing on disallowances; it provides only that the state, upon request, shall receive a reconsideration. 42 U.S.C.A. § 1316(d)

Although the agency's treatment of the claim does not control this court's characterization of the dispute, *State Department of Public Works*, it is nevertheless relevant. *Massachusetts*, supra at 29–30.[8] Further, unlike the typical noncompliance determination, HHS's decision does not frustrate an ongoing desire of the state to implement a general reimbursement method or practice. Because GDMA does not seek to pay for abortion services now or in the future, the issue here involves "an isolated and highly focused inquiry" into specific past payments and has no wide-ranging implications for future administration of the state plan. *Medical Services Administration*, 590 F.2d at 136.

█ Although the characteristics of HHS's determination do not alone compel a particular result, *cf. Medical Services Administration*, the purposes underlying § 1316(a)'s provision for initial review in the court of appeals persuade us that the matter should be classified as disallowance. A finding of noncompliance, generally appropriate to remedy a broad, pervasive defect in the state's plan as a whole, *see New Jersey I*, supra at 1269, impairs the state's ability to implement an important aspect of its reimbursement plan. Further, HHS, in cases of noncompliance, may utilize the rather drastic sanction of halting the flow of all federal funds. *See* note 7 *supra*. Because the adverse consequences associated with a noncompliance determination might be severe, Congress eliminated one tier of judicial review, giving states a more expeditious opportunity to vindicate their asserted rights. As the Senate Report explains, the provisions for administrative and judicial review of noncompliance determinations were

> designed to assure that the States will not encounter *undue delays* in obtaining Federal determinations on acceptability of proposed State plan material under the public assistance programs . . . .

S.Rep. No. 404, 89th Cong., 2d Sess. (1965) (emphasis added), *reprinted in* 1965 U.S. Code Cong. & Ad.News 1943, 2090. Congress thought that expeditious judicial review would place " 'the States on a more equal basis with the Federal Government in the administration of the public assistance program' and thereby reduce intergovernmental friction." *State Department of Public Works*, 556 F.2d at 331 (quoting 111 Cong.Rec. 5048 (1965) (remarks of Rep. Dwyer)).

Here the policies underlying § 1316(a) do not apply. There is no special need for speed. HHS does not seek a general cessation of federal funds and its action does not implicate the future design or administration of the state plan. GDMA's belief that "judicial review . . . in District Court is an appropriate procedural mechanism to resolve its appeal", Petitioner's Motion to Stay Proceedings at 2, persuasively indicates that the state's interests can be adequately accommodated without treating the matter as a noncompliance determination subject to initial review in this court.

We accordingly characterize HHS's decision as a disallowance and dismiss for want of jurisdiction. We need not decide the availability of review in the district court. *See Medical Services Administration*, supra at 136.

(West Supp.1983). The procedures governing disallowance reconsiderations are considerably less formal than those applicable where the state challenges a noncompliance determination. 45 C.F.R. § 201.13 (1982).

There are also remedial differences between disallowances and findings of noncompliance. In the case of a noncompliance determination the statute permits the Secretary to withhold *all* federal funds until she is satisfied that "there will no longer be any such failure to comply." 42 U.S.C.A. § 1396c. A disallowance, on the other hand, authorizes the Secretary to withhold only the amount it has determined the state has claimed improperly.

8. Where the Secretary has processed the matter as a noncompliance determination, initial review in the court of appeals is more appropriate for two reasons. First, the more formal procedures surrounding noncompliance determinations mean that the reviewing court will have a more developed record. Second, the more drastic sanctions that can accompany a noncompliance determination heighten the need for expeditious judicial review.

Petitioner's motion to stay is DENIED and respondent's motion to dismiss is GRANTED.