SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Petitioner,

v.

Otis R. BOWEN, in his official capacity as Secretary, United States Department of Health and Human Services; Office of Child Support Enforcement, United States Department of Health and Human Services; Departmental Grant Appeals Board, United States Department of Health and Human Services, Respondents.

No. 88-3032.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 3, 1988.

Decided Jan. 20, 1989.

Gen. Counsel, S.C. Dept. of Social Services) on brief, for petitioner.

Robert David Kamenshine (John R. Bolton, Asst. Atty. Gen., William Kanter, Appellate Staff, Civil Div., U.S. Dept. of Justice, Washington, D.C., on brief), for respondents.

Before ERVIN, and WILKINSON, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

WILKINSON, Circuit Judge:

The Secretary of Health and Human Services moves to dismiss South Carolina's petition for judicial review of an agency order denying federal reimbursement for certain Child Support Program expenditures made by the state. The funds represent the federal government's share of interest earned on child support obligations collected by South Carolina's Department of Social Services pursuant to the Child Support Enforcement Act, 42 U.S.C. §§ 651–62. The Secretary asserts that the agency's order is not properly before this court because it represents a "disallowance" determination which is not subject to direct review under 42 U.S.C. § 1316. We think that the Secretary's characterization of these determinations should ordinarily be controlling and we therefore dismiss South Carolina's petition for want of subject matter jurisdiction.

## I.

### A.

The Child Support Enforcement Program provides federal financial assistance to the states "[f]or the purpose of enforcing the support obligations owed by absent parents to their children ..., locating absent parents, establishing paternity, and obtaining child and spousal support...." 42 U.S.C. § 651. The Act establishes a program—known as the IV–D program—which is a joint federal and state undertaking administered in coordination with the Aid to Families with Dependent Children program. A state wishing to participate in the AFDC

James Emory Smith, Jr., Asst. Atty. Gen., Augusta, Me., (N. Bruce Holland,

program also is required to implement a IV–D program, which is designed to provide AFDC recipients with certain child support services. 42 U.S.C. § 602(a)(27). *See generally* S.Rep. No. 93–1356, 93d. Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin.News 8133, 8145–48.

In order to participate in the IV–D program, a state must submit a plan to the Secretary of Health and Human Services which conforms to the requirements of 42 U.S.C. § 654. The Secretary is required to review state IV–D plans, evaluate their implementation, and ensure that states comply with federal IV–D standards. 42 U.S.C. § 652(a). The Secretary also is authorized to audit state programs to ensure their continuing conformity with relevant statutory and administrative requirements. 42 U.S.C. § 652(a)(4). *See also* 42 C.F.R. § 305. The federal government reimburses the states for a percentage of the administrative costs of a state's IV–D program according to a statutory formula. 42 U.S.C. § 655(a). If the Secretary determines, however, that certain sums should have been excluded from claimed expenditures by a particular state, HHS offsets those sums against subsequent reimbursements to that state. 42 U.S.C. § 655(a)(1)(B). The Office of Child Support Enforcement (OCSE) is the HHS administrative unit charged with overseeing state IV–D programs. The South Carolina Department of Social Services (DSS) administers an approved child support program in South Carolina.

### B.

On November 24, 1986, the Audit Division of OCSE issued a report on interest earned by South Carolina on AFDC child support collections for the period October 1, 1981 through June 30, 1986. The audit revealed that interest earned on child support collections for the period totaled $1,110,571.59. The federal share of this earned interest income was determined to be $777,745.62.

On January 12, 1987, OCSE notified South Carolina that $777,746.00 in federal financial participation was being disallowed. According to OCSE, the disallowance was intended as an offset for interest earned on child support collections which was not used to reduce South Carolina's reimbursable expenses as required by 42 U.S.C. § 655(a)(1)(B) and 45 C.F.R. § 304.50(b). The Director of OCSE and the HHS Departmental Grant Appeals Board upheld the disallowance determination. South Carolina then petitioned for review of the Departmental Grant Appeals Board decision pursuant to 42 U.S.C. § 1316(a)(3). The Secretary moved to dismiss the petition, arguing that the federal circuit courts lack subject matter jurisdiction to review the agency's determination on direct appeal.

South Carolina also filed an action in the United States District Court for the District of South Carolina seeking to enjoin the Secretary's disallowance. The district court found that it had subject matter jurisdiction, *see* 5 U.S.C. § 702, and granted South Carolina's motion for preliminary relief. The district court proceedings have been stayed pending resolution of this appeal.

### II.

Whether the Secretary's determination with respect to the $777,746.00 is a "disallowance" determination under 42 U.S.C. § 1316(d) or a finding of plan-nonconformity under § 1316(a) has jurisdictional significance. While § 1316 authorizes direct review in the courts of appeals of plan-nonconformity determinations in many federal welfare programs, it does not provide for initial review in the courts of appeals of a disallowance determination. Jurisdiction over disallowance determinations is available, however, in the district courts. *See Bowen v. Massachusetts,* — U.S. —, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); *Oregon Dep't of Human Services v. Dep't of Health & Human Services,* 727 F.2d 1411, 1413 (9th Cir.1983); *Illinois Dep't of Public Aid v. Schweiker,* 707 F.2d 273, 277 (7th Cir.1983).

A plan-nonconformity determination ordinarily involves a finding by the Secretary that a state's IV–D program fails to satisfy

the applicable statutory or administrative standards. *See Georgia Dep't of Medical Assistance v. United States Dep't of Health & Human Services,* 708 F.2d 627, 628 (11th Cir.1983). If the Secretary determines that a state's IV–D program is not in compliance, he may withhold a percentage of the quarterly AFDC payments due to that state. *See* 42 U.S.C. §§ 604(d) & 603(h). A disallowance determination, on the other hand, is generally characterized as a finding that a particular state expenditure will not be reimbursed by the federal government. *See Massachusetts v. Departmental Grant Appeals Bd. of the United States Dep't of Health & Human Services,* 698 F.2d 22, 25 (1st Cir.1983). A disallowance finding normally arises from a routine audit, and generally will not have a wide-ranging impact on the ongoing administration of a state's IV–D program. *Oregon,* 727 F.2d at 1414. There is little likelihood, for example, that a disallowance finding will result in the cut-off of all federal funds to a state's IV–D program.

Despite these general principles, distinguishing between disallowance and plan-nonconformity determinations can be difficult. *Illinois,* 707 F.2d at 276. South Carolina argues that this case is properly before this court because the dispute involves a plan-nonconformity question. The Secretary, on the other hand, characterizes this matter as a disallowance dispute and urges this court to dismiss South Carolina's petition for want of jurisdiction.

### III.

▮ The central question is who should decide whether a particular determination is a matter of plan-nonconformity or disallowance. We hold that ordinarily the Secretary's characterization of the dispute is controlling.

Some courts have rejected this bright-line test and chosen instead a "functional" approach to the jurisdictional question. The First Circuit, for example, examines whether the Secretary's determination "is of such a character, by reason of its generality and importance, as to point towards inclusion under the compliance rather than

the disallowance rubric." *Massachusetts,* 698 F.2d at 27. The Eleventh Circuit draws the distinction "with reference to the character of the administrative determination," viewed in light of the policies underlying appellate court review. *Georgia,* 708 F.2d at 629. According to the Fifth Circuit, the court should review the Social Security Act, its legislative history, and the circumstances of the claim to see what label best serves the purposes of the Act and the equities of the situation. *State Dep't of Public Welfare v. Califano,* 556 F.2d 326, 330 (5th Cir.1977). The Third Circuit bases its determination on an "independent evaluation of the underlying substance of the dispute." *New Jersey v. Dep't of Health & Human Services,* 670 F.2d 1262, 1272 (3d Cir.1981). According to this view, courts of appeals are required to look beyond the Secretary's characterization of the dispute because "[t]o do otherwise ... would make the jurisdiction of a court of appeals contingent upon the Secretary's unfettered discretion." *Id. See also Pennsylvania Dep't of Public Welfare v. Heckler,* 730 F.2d 923 (3d Cir.1984).

A review of these cases illustrates the disadvantage of this jurisdictional standard. The functional approach is "complicated and therefore uncertain in application —a serious weakness in a jurisdictional test." *Illinois,* 707 F.2d at 278. Whether a court may properly exercise jurisdiction is a preliminary matter that should be resolved quickly. States deserve to know at the outset whether challenges to the Secretary's actions belong initially in the district courts or the courts of appeals. The uncertainty of the functional approach forces a state to seek review of an agency decision in both forums. These dual filings are time-consuming and dissipate judicial as well as administrative resources. *Oregon,* 727 F.2d at 1414. If the purpose of the functional approach is to reach a prompt determination of the funding dispute, that purpose is defeated by lengthy threshold proceedings whose outcome is unclear. In addition, the Secretary represents the best prospect for uniform application of jurisdictional standards. Consistent administration of the AFDC and Child Support pro-

grams is promoted by deferring to his characterization of the dispute. We agree, therefore, with the Sixth, Seventh, and Ninth Circuits that deference should be paid to the Secretary's determination in order to promote a prompt and certain application of the jurisdictional test. *Michigan Dep't of Human Services v. Secretary of Health & Human Services,* 744 F.2d 32 (6th Cir.1984); *Illinois,* 707 F.2d at 273; *Oregon,* 727 F.2d at 1411.

We are reassured in our view by the fact that even those circuits which follow a "functional" approach to the jurisdictional question accord weight to the Secretary's characterization of the dispute. *See, e.g., Georgia,* 708 F.2d at 630 (the Secretary's treatment of the claim does not control the court's characterization of the dispute but "it is nevertheless relevant"); *Massachusetts,* 698 F.2d at 30 (Secretary's characterization is not definitive but is entitled to some weight). Likewise, those circuits that have adopted a bright-line test would be hard pressed to defer to the Secretary's characterization in those instances where it was wholly at odds with the operation of the statute. The purported conflict among the circuits may therefore be more apparent than real. In this case, for example, ample evidence supports the Secretary's characterization of the dispute as a disallowance. The dispute arose as the result of a routine audit. The Secretary is not threatening a fund cutoff to South Carolina for a non-conforming provision of that state's IV–D plan. Nor do his actions implicate the over-all administration of South Carolina's IV–D program. South Carolina administers a IV–D program which has been approved by the Secretary. What is at issue is a federal disallowance of interest income which the State of South Carolina claims.

In sum, we defer to the Secretary's characterization of this dispute as a disallowance.[1] This court is therefore without jurisdiction to review the case on direct appeal from the agency. We intimate no view on the merits of the underlying dispute.

Based on the foregoing principles, South Carolina's petition for review is hereby

DISMISSED.

---

1. The Secretary asserts that direct review does not lie in this court even if the dispute involves a plan-nonconformity determination. He argues that § 1316 does not speak directly to court of appeals review of a state plan under the IV–D program. Because we have accepted the Secretary's view that this case involves a disallowance determination, we see no need to address the question.