Aaron A. JOHNSON, in his official capacity as Commissioner of the Georgia Department of Medical Assistance

v.

Louis W. SULLIVAN, M.D., Secretary of United States Department of Health and Human Services; United States Department of Health and Human Services; Lou Hayes, Acting Administrator of the Health Care Financing Administration; and George Holland, Regional Administrator of the Health Care Financing Administration.

Civ. No. 1:89–cv–2639–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 10, 1991.

Kathry Lloyd Allen, Stephanie B. Manis and William C. Joy, Office of State Atty. Gen., Atlanta, Ga., for plaintiff.

Dana Joseph Petti, U.S. Dept. of Health and Human Services, Office of Gen. Counsel, Nina Loree Hunt and Jane Wilcox Swift, Office of U.S. Atty., Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the court on the court's own motion pursuant to its October 4, 1990 order denying Defendants' motion for reconsideration.

Inasmuch as the October 4, 1990 order denied reconsideration based upon difficulties in obtaining a complete record[1], the court vacates that order and considers anew Defendants' motion.

In an order of July 24, 1990, the court denied Defendants' motion for judgment on the pleadings. The court concluded that Defendants had not submitted certain documents which might have enabled the court to determine if it had jurisdiction over the disputed matters. Defendants now ask for reconsideration based on evidence in the administrative record. Defendants have chosen not to argue matters of jurisdiction, choosing instead to agree with Plaintiff that this is a disallowance dispute properly before this court. *See, infra,* p. 1499 (discussion of jurisdictional questions).

For purposes of Defendants' motion for judgment on the pleadings, the court accepts the allegations in the State's complaint (styled "petition") as true and treats contradicting allegations by Defendants as false. *Hal Roach Studios v. Richard Feiner and Co.,* 883 F.2d 1429, 1436 (9th Cir.1989). Judgment on the pleadings is proper in this case if Defendants clearly establish on the face of the pleadings that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law. *Id.; accord, Madonna v. United States,* 878 F.2d 62, 65 (2d Cir.1989).

Plaintiff ("the State") recites the following in its complaint. The Health Care Financing Administration, a division of the Defendant Department of Health and Human Services, conducted a Utilization Control Validation Survey in Georgia between June 15 and 19, 1987. The purpose of this survey was to ensure that Georgia had conducted a thorough "utilization of services" review of Medicaid recipients by examining the quality of care and services delivered to each recipient residing in nursing homes. The nursing homes in question are ones meeting the statutory definitions for "skilled nursing facilities" and "intermediate care facilities." Three hundred and thirty such homes required utilization review during the relevant time period herein, but the Health Care Financing Administration reviewed patients from a sampling of those homes.

By letter dated December 24, 1987, the Health Care Financing Administration informed the State that a penalty was being assessed against it for the first two quarters of 1987 for its alleged failure to annually review the services provided to three nursing home patients. The Health Care Financing Administration had concluded that "the state of Georgia failed to make a satisfactory and valid showing that there was in operation an effective program for controlling the utilization of services ... as required by Section 1903(g) of the Social

---

1. Both in the original motion for summary judgment and in the motion for reconsideration pursuant to the denial of summary judgment, the court did not have before it the administrative record.

Security Act [42 U.S.C. § 1396b(g) ]." [2] The penalty assessed for this failure was $104,887.83 [3] as derived from the statutory formula at 42 U.S.C. § 1396b(g)(5).

Georgia carries out its utilization review through a contract with the Georgia Medical Care Foundation ("the Foundation"). According to Plaintiff, the Foundation is approved by the Health Care Financing Administration as a "Professional Review Organization" for the state of Georgia.[4] During the time in question, the Foundation's review team relied upon patient lists generated by the nursing homes in order to review the care and services provided to each patient. One patient which the review team missed did not appear on the patient list provided by the relevant facility. The name of the other missed patient appeared on the relevant facility-generated list, but the person was listed, incorrectly, as a private pay patient for which no review would be required.

The complaint also states that Georgia has been operating its utilization review program under a "superior waiver" approved by the Health Care Financing Administration since 1976. Ostensibly, by approval of this "superior waiver," the Health Care Financing Administration has conclusively determined that Georgia's program of utilization review is acceptable.

The State appealed the Secretary of the Department of Health and Human Services' decision to reduce the State's Medicaid funding to the Department of Health and Human Services Grant Appeals Board. The Board upheld the Secretary's decision on August 4, 1988.

The State is seeking declaratory and injunctive relief and judicial review of the Secretary's decision disallowing $104,-887.83 for the State of Georgia's failure to adequately effect reviews of Medicaid patients in nursing homes. Primarily, the State contends that its review was adequate under either of two statutory exceptions contained in 42 U.S.C. § 1396(g)(4)(B), one pertaining to the State's good faith and due diligence in attempting to meet statutory requirements, the other pertaining to a mere technical failure to meet statutory requirements. *See, infra,* pp. 1500–01.

Defendants move for judgment on the pleadings, arguing that the State's reliance on facility-generated patient lists frustrates the goals of utilization review and that reliance on such lists in itself makes the statutory exceptions to the review requirements unavailable to the State.

The State also presents three other theories for relief in its complaint and submissions directed to the motion. First, it argues that by contracting with a "Professional Review Organization"—as defined in the Medicaid regulations—to carry out utilization review, it by law avoided the assessment of any disallowance penalty. Second, the State contends that it holds a waiver relating to its subcontracted method of conducting reviews and that such waiver precludes the imposition of a disallowance. Finally, it argues that even if some penalty was appropriate, the one assessed was in violation of the statute in that the penalty constituted a facility-wide disallowance for each of the two patients who were not reviewed and was thus miscalculated. Defendants argue against all of these theories for relief at length.

The Social Security Act provides for federal financial assistance to states that elect to reimburse certain health care providers for the cost of specified services to needy persons. 42 U.S.C. § 1396 (Supp.1990); *Blum v. Yaretsky,* 457 U.S. 991, 993, 102

---

**2.** 42 U.S.C. § 1396b(g)(1) provides for the reduction of a state's federal medical assistance a percentage of amounts claimed for a calendar quarter for long-stay services unless the state shows that it has "an effective program of medical review of the care of patients ... whereby the professional management of each case is reviewed and evaluated at least annually by independent professional review teams."

**3.** This figure reflects an adjustment subsequent to an initial figure of $129,879.53.

**4.** 42 C.F.R. § 462 describes Professional Review Organizations. The complaint is clearly suggesting that the Foundation, as a Professional Review Organization, can be "deemed" the entity responsible for carrying out Georgia's statutory utilization reviews under 42 C.F.R. § 456.2(b)(2). *See, infra.*

S.Ct. 2777, 2780, 73 L.Ed.2d 534 (1982). A state need not participate in this program, popularly known as Medicaid. However, if it does, it must comply with the statute's strictures, including those requiring the state to make "a showing satisfactory to the Secretary ... [that it has] an effective program of medical review of the patients in ... [skilled] ... and intermediate care facilities ... whereby the professional management of each case is reviewed and evaluated at least annually by independent professional review teams." 42 U.S.C. § 1396b(g)(1) (Supp.1990). If an unsatisfactory showing is made, the Secretary is authorized to reduce the state's Medicaid grant under a formula set out in 42 U.S.C. § 1396b(g)(5).

The procedures governing the Secretary's decision to disallow Medicaid reimbursement permit the Grant Appeals Board to reconsider the disallowance. *See* 42 U.S.C. § 1316(d); 45 C.F.R. § 201.13. Challenges of decisions by the Grant Appeals Board are likewise subject to review in federal court. *Id.*

Cases seeking review in federal court are subject to a two-pronged jurisdictional analysis. *See, Georgia Department of Medical Assistance v. United States Department of Health and Human Services,* 708 F.2d 627 (11th Cir.1983). The court of appeals for the circuit in which the state is located has original jurisdiction over disputes involving noncompliance, such as those asserting that "the state's administration of its plan violates federal requirements." *Id.* at 629; 42 U.S.C. § 1316(a)(3) (1983). District courts generally review disputes involving disallowances such as "the failure to perform the inspections necessary under the utilization control requirement of 42 U.S.C. § 1396b(g)." *Colorado Department of Social Services v. Department of Health and Human Services,* 558 F.Supp. 337, 347 (D.Col.1983); *Bowen v. Massachusetts,* 487 U.S. 879, 885, 108 S.Ct.

2722, 2727, 101 L.Ed.2d 749 (1988); *see, Georgia v. Califano,* 446 F.Supp. 404 (N.D. Ga.1977). A disallowance dispute may center around the question of whether the Secretary acted appropriately in disallowing "specific and isolated payments." *See, Georgia Department of Medical Assistance v. United States Department of Health and Human Services,* 708 F.2d 627, 628–29 (11th Cir.1983); 42 U.S.C. § 1316(a)(3); *see also, Delaware Division of Health and Social Services v. United States Department of Health and Human Services,* 665 F.Supp. 1104, 1111 (D.Del. 1987).

In the Eleventh Circuit, the reviewing court should give some weight to the agency's determination of whether the dispute is one of non-compliance or disallowance. *See, Georgia Dep't of Medical Assistance v. United States Dep't of Health and Human Serv.,* 708 F.2d at 628–29; *see also, id.,* n. 4 (discussing the rules in other circuits). Here, as noted at the outset of this order, the parties choose not to dispute the characterization of the dispute as anything other than a disallowance decision. The record supports such a characterization, and the court declines to address today, see below, matters which would engage the court in determining the fate of Georgia's review plan. The case presents the quite simple matter of a single, comparatively small disallowance [5] based upon Defendants' sampling of patients and resulting conclusion that Georgia failed to meet—not conform its plan to-certain statutory requirements. *See, id.* at 629–30 (discussing factors, ruling matter a disallowance dispute).

It is now established that because the district courts have power to review the Secretary's disallowance decisions pursuant to 5 U.S.C. § 702, they also have the authority "to grant the complete relief authorized by [5 U.S.C.] § 706." [6] *Bowen v.*

---

**5.** *See, infra,* n. 12.

**6.** 5 U.S.C. § 702 (1977) provides, in relevant part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning

of a relevant statute, is entitled to judicial relief thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of

*Massachusetts,* 487 U.S. 879, 911, 108 S.Ct. 2722, 2741, 101 L.Ed.2d 749 (1988). A court's order may be declaratory or injunctive in denying the Secretary's disallowance on the grounds given inasmuch as "this outcome is a mere byproduct of that court's primary function of reviewing the Secretary's interpretation of federal law." *Id.* at 910, 108 S.Ct. at 2740. Declaratory and injunctive relief are allowable where a disallowance decision "represents an ongoing policy that has significant prospective effect." *Commonwealth of Massachusetts v. Secretary of Health and Human Services,* 816 F.2d 796, 799 (1st Cir.1987), *aff'd in part, rev'd in part on other grounds,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

A comparison of Defendants' answer with the allegations contained in the complaint reveals that the facts of the case as set out above are largely undisputed. Defendants, with their motion for judgment on the pleadings, ask the court for a final determination of legal questions. A motion for judgment on the pleadings under Fed. R.Civ.P. 12(c) provides a means for disposing of cases when the material facts of the case are not disputed and a judgment on the merits is possible from the contents of the pleadings. 5A Wright & Miller § 1367 at 509–510 (1990). A Rule 12(c) motion only has utility when all material allegations of fact are admitted in the pleadings and only questions of law remain. *Id.; see, Weeden v. Continental Health Affiliates, Inc.,* 713 F.Supp. 396, 398 (N.D.Ga.1989) (quoting Wright & Miller). The State's petition does not set forth a "complaint" in the normal sense, but rather, seeks a re-

view of Defendants' decisions and declaratory and injunctive relief based on that review. Only Defendants move for judgment on the pleadings, so a denial of the motion would not warrant an entry of judgment for the State. *See,* Fed.R.Civ.P. 12(c); *see also, Moon v. Secretary, United States Dep't of Labor,* 747 F.2d 599, 602 (11th Cir.1984), *cert. denied,* 471 U.S. 1055, 105 S.Ct. 2117, 85 L.Ed.2d 481 (1985) (appeal of district court holding on cross-motions for judgment on the pleadings in administrative review case). As a practical matter, however, should Defendants' arguments fail, the Secretary's disallowance might necessarily be judged improper on the grounds offered. In that case, declaratory or injunctive relief could be appropriate.

In reviewing the questions presented, the court will apply the arbitrary and capricious standard. 5 U.S.C. § 706(2)(A) (1977) (Administrative Procedure Act's standard of review); *see, Medical Center Hospital v. Bowen,* 839 F.2d 1504, 1510 (11th Cir. 1988) (reviewed under 42 U.S.C. § 1395oo (f)(1)); *Delaware Division of Health and Social Services v. United States Department of Health and Human Services,* 665 F.Supp. at 1119 and n. 17. "An 'arbitrary and capricious' finding is one where the agency has made a clear error of judgment." *Delaware,* 665 F.Supp. at 1119 and n. 17.

The court will first decide the question that the State's petition for judicial review presents as the core dispute: are either or both of the statutory exceptions to the

---

legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 706 (1977) provides, in relevant part:
   To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
   (1) compel agency action unlawfully withheld or unreasonably delayed; and
   (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
   (B) contrary to constitutional right, power, privilege, or immunity;
   (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
   (D) without observance of procedure required by law; ....
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

requirement that the State review every patient—which the State undeniably did not do—available to it?

The allegations in the complaint reveal that Georgia failed to review "the professional management of each case" when it skipped the two Medicaid patients at issue. 42 U.S.C. § 1396b(g)(1); *see also,* 42 U.S.C. § 1396a(a)(26), (31) (source of requirement). The court further assumes in the State's favor—though in fact it appears that Defendants do not dispute this for purposes of their motion—that Georgia conducted an on-site inspection during the operative time frame of "not less than 98 per centum of the number of ... facilities requiring ... inspection, and ... in every ... facility which has 200 or more beds." 42 U.S.C. § 1396b(g)(4)(B). Thus, the question before the court is whether the State meets the requirements of either the good faith and due diligence or the technical failings exceptions.

Congress created these exceptions in an attempt to temper the rigidity of the requirement that all patients be reviewed annually. 42 U.S.C. § 1396b(g)(4)(B); *Delaware Division of Health and Social Services v. United States Department of Health and Human Services,* 665 F.Supp. at 1121. These statutory exceptions require the Secretary to find a state's showing satisfactory even if each case is not timely reviewed. The statutory exceptions state in pertinent part:

(B) The Secretary shall find a showing of a State, ... (1) to be satisfactory ... with respect to the requirement that the State conduct annual onsite inspections in ... skilled nursing facilities, and intermediate care facilities ..., if the showing demonstrates that the State has conducted such an onsite inspection during the 12–month period ending on the last date of the calendar quarter—

(i) in each of not less than 98 per centum of the number of such hospital and facilities requiring such inspection, and

(ii) in every such hospital or facility which has 200 or more beds,

and that, with respect to such hospitals and facilities not inspected within such period, the State has exercised good faith and due diligence in attempting to conduct such inspection, or if the State demonstrates to the satisfaction of the Secretary that it would have made such a showing but for failings of a technical nature only.

42 U.S.C. § 1396b(g)(4)(B).

The Secretary interprets the good faith and due diligence and the technical failings phraseology as being mutually exclusive. That is, one exception being premised upon a state's inability to complete a required review due to circumstances within its control, and the other exception being premised on an inability to complete a review due to circumstances beyond its control, the same set of facts cannot support both exceptions. The implementing regulations for the statutory exceptions state:

§ 456.653. Acceptable reasons for not meeting requirements for annual on-site review.

The Administrator will find an agency's showing satisfactory, even if it failed to meet the annual review requirements of § 456.652(a)(4), if—

(a) the agency demonstrates that—

(1) It completed reviews by the end of the quarter in at least 98 percent of all facilities requiring review by the end of the quarter;

(2) It completed reviews by the end of the quarter in all facilities with 200 or more certified Medicaid beds requiring review by the end of the quarter; and

(3) With respect to all unreviewed facilities, the agency exercised good faith and due diligence by attempting to review those facilities and would have succeeded but for events beyond its control which it could not have reasonably anticipated; or

(b) The agency demonstrates that it failed to meet the standard in paragraph (a)(1) and (2) of this section by the close of the quarter for technical reasons, but met the standard within 30 days after the close of the quarter. Technical reasons are circumstances within the agency's control.

(c) Facilities that are reviewed under paragraph (b) of this section, after the quarter in which they were due for review, retain their original anniversary quarter due date for purposes of subsequent reviews.

42 C.F.R. § 456.653 (1989).

██ Under the Secretary's regulations, because the State chooses to utilize only facility generated lists of Medicaid patients, which is a matter within its control, it does not qualify for the good faith and due diligence exception. There can be no question that reliance upon such lists is not, in the words of the regulation, "beyond [the State's] control." The State chose to carry out its plan by relying on facility-generated lists, and nothing in the record indicates otherwise.

Given the facts as alleged in the complaint, the court addresses the availability of the first regulatory exception with one caveat. As discussed, *supra,* insofar as the reasonableness of reliance on facility-generated lists raises a question of plan conformity, this court would lack jurisdiction to decide that matter. 42 U.S.C. § 1316(a)(3); *see, Georgia Department of Medical Assistance v. United States Department of Health and Human Services,* 708 F.2d 627 (11th Cir.1983). The problem is this: it is easy enough to conclude that the first regulatory exception is simply unavailable because reliance on facility-generated lists is, without doubt, within the State's control. However, the ultimate authority to be appealed to is the statute. *See, Medical Center Hospital v. Bowen,* 839 F.2d at 1510. The statute's first exception does not contain language relating to what is or is not within the State's control. The statute simply requires "good faith and due diligence." 42 U.S.C. § 1396b(g)(4)(B). The court need decide, therefore, whether the State's reliance on facility-generated lists represents a lapse in good faith or a failure to exercise due diligence. Deciding these questions runs the risk of deciding a larger question of plan conformity. Thus, the necessary inquiry is akin to judging the reasonableness of the State's plan—that is, its conformity to statutory requirements. This the court does not do today.

With an eye toward the jurisdictional difficulty presented by the need to decide matters related to the reliance on facility-generated lists, the court addresses a quite narrow question. Did the State exercise good faith and due diligence? The court concludes that it did not.

The reason is a simple one: in relying on facility-generated lists, the entity charged with reviewing patient care has handed over the important task of patient identification to the facilities being reviewed. The fox-and-henhouse analogy, though overused, comes to mind. The State offers no explanation as to why it did or must rely on facility-generated lists despite the evident danger to patients of doing so. Though the omission of certain patients in this case may be innocent, there is potential for abuse on the part of the facilities who supply the lists.[7] They have no incentive to provide the names of patients whose care is substandard. By simply omitting the names from the lists they themselves generate, the State would be allowing the facilities to thwart the quality of care standards sought to be upheld by utilization review.

Viewed in this light, the Secretary's regulatory exception is seen to be perfectly consistent with the statute. *Cf., Medical Center Hospital v. Bowen,* 839 F.2d at 1510 (discussing relationship between statute and regulation as well as court's function in reviewing same). In addition to requiring good faith and due diligence, it adds language relating to events within the State's control. The regulation does no more than say that if an occurrence such as a missed patient is beyond the State's power to prevent or foresee, that occurrence is not an example of bad faith or lack of due diligence. This certainly is not controversial.

**7.** Defendants' review of patients was a sampling. Common sense suggests that extrapolating from the data would yield more omitted patients.

The court finds that the State cannot satisfy the first statutory exception.

■ The court now turns to the second statutory exception. The statute provides that a state is excepted from the requirement of reviewing each patient if it meets the numerical criteria not in dispute here and if it would have made a showing that it reviewed each patient "but for failings of a technical nature only." 42 U.S.C. § 1396b(g)(4)(B). The regulation adds that "technical reasons" are "circumstances within the agency's control." 42 C.F.R. § 456.653(b).

The regulation, here again, simply elaborates upon latencies in the statute. It contrasts the content of the first exception, wherein only events beyond the State's control qualify the State for the exception, with a more lenient rule: if some technical matter has prevented the State making its showing, it is permissible for that technical matter to be within the State's control. In this case, even though the State chose to rely on facility-generated patient lists—a matter within its control-the State could still theoretically qualify for the exception if its showing to the secretary was inadequate for a "technical reason." *Id.*[8]

The court has little difficulty in concluding that the failure arising from or inhering in the use of facility-generated lists is not a mere technical failure. Use of the lists, in causing the State to fail to review some patients, is the ultimate cause of the instant dispute. Inasmuch as the State's use of facility-generated lists is a feature of the State's plan, the failure evidenced by their use is inherent and persistent. The State did not fail to make its showing to the Secretary because of discrete, isolated, technical events such as clerical errors, or late reports, or isolated miscommunications. The State failed because of an integral feature of its review plan. Where a technical failure may be thought of as an unforeseeable and discrete failure to properly execute a plan, the failure here foreseeably arises from a suspect feature of the plan. That is to say, it is foreseeable that patient lists generated by the facilities themselves pose a danger of omissions. The court concludes that the State's failure was more severe than a technical failure and that it cannot avail itself of the second statutory exception.

Congress clearly directed that "each case" be reviewed annually. 42 U.S.C. § 1396b(g)(1). The purpose of this requirement is to assure high quality patient care to each recipient of Medicaid funds. *See* 130 Cong.Rec. H 6544, 6740 (June 22, 1984); 42 U.S.C. § 1396a(a)(22). Statutory exceptions to clearly articulated public policy obligations should be narrowly construed. *Colorado Department of Social Services,* 558 F.Supp. at 351. The State's urgings that "the punishment does not fit the crime" and that, because it "missed only two patients ..., it should have been given the benefit of [the statutory] exceptions," besides not being strictly legal in nature, say nothing as to why the State should choose to rely on the monitored facilities to generate patient lists. Congress has provided for exceptions to the stringent requirement of reviewing each patient where it deemed such exceptions appropriate. It is not for this court to say that Congress erred in not allowing the states greater latitude. Nor is it for this court to refuse to read the statute as written.

Having reviewed the Secretary's disallowance with the deference accorded his decisions by law, the court finds that the Secretary's refusal to apply the due diligence and technical failings exceptions in this case was not arbitrary and capricious. *See, Medical Center Hosp. v. Bowen,* 839 F.2d at 1510.

■ The next issue to be addressed is the State's contention that because it contracted with a "Professional Review Organization" ("PRO") to carry out the statutorily-mandated patient reviews, the Secretary is precluded from finding that the

---

**8.** For instance, had there been no missed patients due to omissions on the patient lists, but had the state failed to transmit a completed report to the Secretary because of, say, a clerical error, then the state would not be losing the exception for reasons having to do with its reliance on facility-generated lists.

State lacked an effective program of patient review. The argument appears to be that because the Professional Review Organization in this case, the Georgia Medical Care Foundation, has been "designated as a PRO by the Secretary for purposes of surveying Medicare patients," the Secretary cannot now base a disallowance on this PRO's failures.

The State does not support this argument with any analysis or explanation in either its complaint or in its submissions directed toward the instant motion. It does point out that under 42 C.F.R. § 456.2, a state may meet the various review requirements imposed by law "by [d]eeming of medical and utilization review requirements if the agency contracts with a PRO to perform that review...." 42 C.F.R. § 456.2(b)(2).[9] Georgia could not be penalized had it delegated complete authority for conducting patient reviews to its PRO. 42 C.F.R. § 456.650(c)(2).[10] However, Defendants assert and the Grant Appeals Board found[11] that the State has not delegated complete authority to the Georgia Medical Care Foundation.

However, on this motion for judgment on the pleadings, the court cannot delve into the contents of the administrative record. *See, Hal Roach Studios v. Richard Feiner and Co.*, 883 F.2d at 1436. Defendants rely on evidence contained in the administrative record for their argument that Georgia's plan explicitly provides that the State meets the statutory review requirements "directly" as opposed to through a PRO. The State, it is true, has made no effort in its arguments before this court to counter Defendants' argument, but neither does the complaint admit to the contents of Georgia's plan. The allegations in the complaint thus provide no basis on which to grant Defendants' motion as to this matter. Whether or not Georgia delegated complete

authority for carrying out the required utilization review is a question of material fact. The State's complaint is still viable on this matter.

The State's complaint also alleges that its superior waiver as approved by the Secretary precludes the disallowance. Georgia claims that it has been operating its review procedures since 1976 under a "superior waiver." With such a waiver, the Secretary effectively admits of the fact that Georgia's procedures are "superior in their effectiveness to the [Utilization Review] plan requirements of Subparts C, D, or E." 42 C.F.R. § 456.505(b). That is, the Secretary waives certain regulatory requirements with which the State would otherwise have to comply.

The State's allegations are irrelevant to the dispute presented. The superior waiver provision of 42 C.F.R. § 456.505(b) has no application to either the statutory or regulatory utilization review requirements for which the State has been penalized for noncompliance. There is no provision for superior waiver of the regulatory requirements invoked in this case. As the quotation from § 456.505(b) shows, the provision for a superior waiver pertains to Subparts C, D, or E of the regulations. The requirements of Subparts C, D, or E are not at issue here; the requirements of Subparts I and J are. Subparts C, D, and E cover the regulations contained in 42 C.F.R. §§ 456.-50–456.348, none of which are at issue here. Subparts I and J, covering the regulations at 42 C.F.R. §§ 456.600–456.657, are the only regulations invoked by the factual allegations in the complaint. It was for this reason that the Grant Appeals Board found the State's argument "simply incorrect" on the applicable law. For whatever reason, the State has made no attempt before this court to explain its rationale for

---

**9.** 42 C.F.R. § 462, generally, sets out the requirements for an organization to be designated as a PRO.

**10.** Arriving at this conclusion requires some cross-referencing of regulatory subparts. In this case, the important regulatory bases for this rule are 42 C.F.R. § 456.650(c)(2) (exempting from penalty states who contract, under regulatory terms, with other entities to perform re-

views) and 42 C.F.R. § 431.630. § 431.630(b)(1) references the contracting requirements of 42 C.F.R. § 434.6(a); § 434.6(a)(1) in turn spells out elaborate requirements for contracts and subcontracts.

**11.** The decision of the Grant Appeals Board is attached to the complaint.

arguing the applicability or even the relevance of 42 C.F.R. § 456.505. The State's arguments concerning the superior waiver are irrelevant, and judgment for Defendants is appropriate as to this part of Plaintiff's complaint.

 Finally, the State raises the argument that the Secretary calculated the disallowance penalty erroneously. It contends that the Secretary's interpretation of the formula spelled out in 42 U.S.C. § 1396b(g)(5) for determining the decrease provided for in § 1396b(g)(1) defies legislative intent by equating a missed facility with a missed patient. The State says that it ought not be penalized for missing entire facilities when it in fact missed only two patients.

§ 1396b(g)(5) provides as follows:

In the case of a State's unsatisfactory or invalid showing made with respect to a type of facility or institutional services in a calendar quarter, the per centum amount of reduction of the State's Federal medical assistance percentage for that type of services under paragraph (1) is equal to 33⅓ per centum multiplied by a fraction, the denominator of which is equal to the total number of patients receiving that type of services in that quarter under the State plan in facilities or institutions for which a showing was required to be made under this subsection, and the numerator of which is equal to the number of such patients receiving such type of services in that quarter in those facilities or institutions for which a satisfactory and valid showing was not made for that calendar quarter.

The State's position is that the fraction tends to equal one where only two patients have been missed. This happens where the denominator is a large number representing total patients to be reviewed and the numerator is that number less the two patients missed. This is the State's only argument, and the State has not suggested any alternative penalty figure.

The State's argument defies the language of both the statute and the implementing regulation. The statute clearly ties the number of patients to be entered into the numerator to "those facilities or institutions for which a satisfactory and valid showing was not made." Thus, instead of reducing the numerator by only the patients missed, the statute contemplates reducing the numerator by the number of patients in a missed facility. If the State misses one patient in a facility, the penalty is calculated as if the State missed every patient in that facility. The regulation interprets the statute in this same manner:

For each level of care, the number of recipients who received services in facilities that did not meet the requirements of this subpart is divided by the total number of recipients who received who received services in facilities for which a showing was required under this subpart. If any of the requirements specified in § 456.652(a)(1) through (4) were not met for any recipient in a facility, the reduction will be computed on the total number of recipients *in that facility* at the level of care in question.

42 C.F.R. § 456.657(a)(1) (emphasis supplied). The State's interpretation of the statute is untenable given clear statutory and regulatory language to the contrary. This being the State's only argument with respect to the calculation of the penalty, and that argument failing, the court finds no grounds for upsetting the Secretary's determination of the disallowance penalty.[12]

Accordingly, Defendants' motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

---

**12.** Defendants point out that the penalty of $104,887.73 is quite small in light of the total funds received by Georgia for its Medicaid program. Georgia apparently receives in excess of $100,000,000.00 every six months for its nursing care facilities alone. The penalty would represent .1% of this figure.