**COLORADO DEPARTMENT OF SOCIAL SERVICES, Plaintiff–Appellee,**

v.

**DEPARTMENT OF HEALTH & HUMAN SERVICES, Louis W. Sullivan, M.D., Norval Settle, Alexander Teitz, and Judith Ballard, in official capacities, Defendants–Appellants.**

No. 89–1353.

United States Court of Appeals, Tenth Circuit.

March 22, 1991.

Joyce K. Herr (Duane L. Woodard, Atty. Gen. of Colo., Charles B. Howe, Deputy Atty. Gen., and Richard H. Forman, Sol. Gen., with her on the brief), Asst. Atty. Gen., Denver, Colo., for plaintiff-appellee.

Patricia L. Bossert, Denver, Colo., (Michael J. Norton, Denver, Colo., U.S. Atty., Stuart M. Gerson, Washington, D.C., Asst. Atty. Gen., Ronald S. Luedemann, Chief Counsel, and Jay A. Swope, Denver, Colo., Associate Chief Counsel, Region VIII, Of-

fice of the Gen. Counsel Dept. of Health and Human Services, with her on the brief), Sp. Atty. to the U.S. Atty. Gen., for defendants-appellants.

Before HOLLOWAY, Chief Judge, and BARRETT and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Defendant-appellant Louis W. Sullivan, Secretary of the United States Department of Health and Human Services (Secretary), appeals the district court's reversal of a decision of the Departmental Appeals Board (DAB). The DAB upheld the Secretary's penalty of $89,428.95 against plaintiff-appellee, Colorado Department of Social Services (CDSS), for its failure to conduct required inspections to review the care received by Colorado Medicaid recipients. The Secretary argues the statutory penalty should be reinstated because CDSS failed to comply with the valid regulation implementing the statute that requires participating states to review annually the care received by Medicaid recipients. CDSS contends the district court properly disallowed the penalty because this regulation is unreasonable. We reverse.

## I. *Background*

### A. Utilization Control Inspections

The Medicaid program was established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* (Act). Under this program, the federal government provides financial assistance to participating states that reimburse individuals and facilities for health care provided to qualified Medicaid recipients. To receive these funds, a state must submit quarterly reports demonstrating the state "has an effective program of medical review of the care of patients in mental hospitals, skilled nursing facilities, and intermediate care facilities ... whereby the professional management of each case is reviewed and evaluated at least annually by independent professional re-

view teams." 42 U.S.C. § 1396b(g)(1); *see also* 42 U.S.C. §§ 1396a(a)(26), (30), (31). These reviews are referred to as "utilization control" inspections. *See State of Wisconsin, Dep't of Health & Soc. Servs. v. Bowen*, 797 F.2d 391, 393 (7th Cir.1986), *cert. dismissed*, 485 U.S. 1017, 108 S.Ct. 1495, 99 L.Ed.2d 883 (1988).

A state failing to inspect all eligible facilities within its borders providing care to Medicaid recipients is subject to reductions in federal payments. 42 U.S.C. § 1396b(g)(5). These penalties are calculated as a percentage of the payment for the quarter in which the failure occured. *Id.*

Penalties will not be imposed, however, if the state has inspected 100% of all eligible facilities with 200 or more beds and not less than 98% of all eligible facilities if one of two conditions is present. First, the Secretary cannot penalize the state if it "has exercised good faith and due diligence in attempting to conduct" the required inspections. *See* 42 U.S.C. § 1396b(g)(4)(B). Second, the state will not be penalized if it "demonstrates to the satisfaction of the Secretary that it would have [inspected 100% of all eligible facilities] but for failings of a technical nature only." *Id.*

The Secretary's regulation implementing section 1396b(g)(4)(B) is found at 42 C.F.R. § 456.653. This regulation explains a state has exercised "good faith and due diligence" and thus will not be subject to a penalty if the state "would have succeeded [in inspecting 100% of all facilities] but for events beyond its control which it could not have reasonably anticipated." 42 C.F.R. § 456.653(a)(3).[1]

### B. The Instant Case

The Secretary periodically conducts surveys to ensure states are properly performing utilization control inspections. 42 U.S.C. § 1396b(g)(2). In May 1988, a federal survey found CDSS had failed to review the care provided to three Medicaid recipi-

---

1. Section 456.653 allows a state to avoid a penalty under the "failings of a technical nature" exception only if the failure to complete the inspections resulted from circumstances within the state's control. 42 C.F.R. § 456.653(b).

This regulation also provides that a state may qualify for this exception only if it corrects any technical failings within thirty days of the close of the quarter. *Id.*

ents at the Spring Creek Health Care Center in Fort Collins, Colorado. CDSS had relied on the Center's census of Medicaid recipients, which did not list these three individuals, in conducting an inspection of the facility. The Secretary notified CDSS of these errors on June 8, 1988. CDSS concedes it did not review these patients until June 10, 1988. On September 19, 1988, the Secretary notified CDSS of its failure to perform satisfactory utilization control inspections for the quarter ending March 31, 1988. The Secretary assessed a statutory penalty of $89,428.95 against CDSS.

CDSS appealed the penalty to the DAB, arguing it had met the requirements of the statutory "good faith and due diligence" exception and therefore should not have been penalized. CDSS asserted the regulatory interpretation of this exception is invalid because the Secretary exceeded his authority by defining a failure to inspect despite the state's "good faith and due diligence" as a failure due to circumstances beyond the state's control. The DAB disagreed with CDSS, holding the regulation constituted a reasonable interpretation of the statute.

CDSS appealed the DAB ruling to the district court. Both parties filed motions for summary judgment. The district court granted CDSS's motion for summary judgment and reversed the DAB ruling, adopting the reasoning of the court in *Delaware Div. of Health & Social Servs. v. United States Dep't of Health & Human Servs.*, 665 F.Supp. 1104 (D.Del.1987). The district court held the statutory "good faith and due diligence" exception is a subjective standard. The court concluded the regulatory interpretation is invalid because it constitutes an unduly restrictive objective standard. The court found CDSS's reliance on the Center's census of its Medicaid recipients met the supposedly subjective statutory standard and therefore vacated the penalty imposed by the Secretary.

On appeal, the Secretary contends the district court erred in rejecting his motion for summary judgment and granting judgment in favor of CDSS. He asserts the

regulation implementing the "good faith and due diligence" exception is a reasonable interpretation of the statute entitled to deference. CDSS maintains that failure to review one recipient cannot equate with failure to inspect the facility caring for that recipient. CDSS further argues the regulation implementing the "good faith and due diligence" exception is invalid as a contradiction of the plain meaning of the statute.

## II. *Failure to Inspect a Facility*

■ We first address the question whether failure to review one recipient in a facility constitutes failure to inspect that facility for purposes of the statutory penalty. Where, as here, Congress clearly has expressed its meaning, we must adopt that expressed intent. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

Because the statute defines an inspection to include the review of care received by each Medicaid recipient, a failure to review one recipient in a facility constitutes a failure to inspect that facility. In 42 U.S.C. § 1396a(a)(26) and (31), Congress requires states participating in the Medicaid program to perform annual "on-site inspections" of facilities to assess the care provided to *each* Medicaid recipient. Congress subjects states to penalties for failure to perform inspections "pursuant to paragraphs 1396a(a)(26) and (31) of this title." 42 U.S.C. § 1396b(g)(1). Given the penalty provision's explicit cross-reference to the definition of an inspection as requiring review of each recipient, we find a failure to review a single recipient constitutes a failure to inspect a facility for purposes of the penalty provision. *Cf. K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."); *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204 (1932) (noting presumption that "identical words used in

different parts of the same act are intended to have the same meaning").

CDSS's admitted failure to review three recipients at the Center therefore represents a failure to inspect that facility. CDSS is subject to the statutory penalty unless it qualifies for the exception in 42 U.S.C. § 1396b(g)(4)(B). Because CDSS met the statutory exception's initial two requirements of inspecting at least 98% percent of all facilities with fewer than 200 beds and all of the facilities with 200 or more beds, we must determine the proper definition of the exception's third requirement of exercising "good faith and due diligence" in attempting to inspect the Center.[2] *See* 42 U.S.C. § 1396b(g)(4)(B).

### III. *Good Faith and Due Diligence*

■ To determine whether the regulation implementing the "good faith and due diligence" exception is valid, we first must determine "whether Congress has directly spoken" to the meaning of this phrase. *Chevron*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781. Our review of the statutory language and the legislative history of the Social Security Act convinces us Congress did not address this issue.[3] Rather, by its use of the phrase "good faith and due diligence," a context-specific standard, Congress implicitly delegated to the Secretary the determination of how "good faith and due diligence" should be measured. *Cf. Estate of Smith v. Heckler*, 747 F.2d 583, 587 (10th Cir.1984) ("Congress gave the Secretary a general mandate to promulgate rules and regulations necessary to the efficient administration of the functions with

which the Secretary is charged by the Act."); *see also* 42 U.S.C. § 1396b(g)(1) (state must make a showing *"satisfactory to the Secretary"* that it has reviewed the care received by each recipient) (emphasis added).

Because Congress's intent in requiring "good faith and due diligence" is ambiguous, we must determine whether the Secretary's interpretation in 42 C.F.R. § 456.653(a)(3) is reasonable. When "the legislative delegation to an agency on a particular question is implicit.... a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782–83; *see also K Mart*, 486 U.S. at 291, 108 S.Ct. at 1817 ("If the agency regulation is not in conflict with the plain language of the statute, a reviewing court must give deference to the agency's interpretation of the statute.").

The Act repeatedly expresses the goal that states annually review the care received by *each* Medicaid recipient. We cannot say the regulation's requirement that a state do everything within its control to ensure all eligible facilities are inspected is an unreasonable implementation of the Act's requirement that states exercise "good faith and due diligence" in conducting utilization control inspections. Because the regulation does not contradict the statute's plain language, we uphold the Secretary's interpretation. *See K Mart*, 486 U.S. at 291, 108 S.Ct. at 1817; *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782–83.

---

**2.** CDSS concedes it has not satisfied the "technical failings" exception of 42 U.S.C. § 1396b(g)(4)(B) and 42 C.F.R. § 456.653(b). We do not address the validity of the regulation implementing this statutory provision.

**3.** Relying on the decision in *Delaware Div. of Health & Social Servs. v. United States Dep't of Health & Human Servs.*, 665 F.Supp. 1104 (D.Del.1986), the district court concluded Congress has directly spoken on this issue. The *Delaware* court cited a Conferees' agreement on the 1977 Social Securtiy Act Amendments that stated: "'If a facility is not reviewed, there will be a reduction in matching unless the Secretary finds there was a good faith attempt to review the institution, and there is no evidence that any

institution ... is deliberately not reviewed.'" 665 F.Supp. at 1120 (emphasis of *Delaware* court omitted) (quoting H.R.Rep. No. 95–673, 95th Cong., 1st Sess. 48 (1977), *reprinted in* 1977 U.S.Code Cong. & Admin.News 3039, 3122). The *Delaware* court held this passage indicates "the legislature plainly directed the Secretary to employ a subjective standard that focused on the State's good faith." 665 F.Supp. at 1124. We do not believe this fragment of legislative history conveys Congress's clear intent that "good faith and due diligence" be judged by a subjective standard. We therefore must defer to the Secretary's interpretation of the statutory provision.

CDSS advances two arguments to demonstrate the regulation is contrary to the express purposes and plain language of the Act. We find neither argument convincing. First, CDSS contends the fact there is an exception for attempted inspections indicates Congress did not intend to require a state to do everything within its control in reviewing each case. On the contrary, to permit a state to avoid the statutory penalty merely because it made a subjective good faith effort to conduct the required inspections would vitiate clearly expressed congressional intent that the care received by each Medicaid recipient be reviewed annually.

Second, CDSS asserts that allowing the Secretary to grant an exception only when a state's failure to inspect is the result of circumstances beyond its control effectively eliminates the exception. The regulation merely limits the availability of the exception to situations where the state has done everything it can to review each recipient's care. The Secretary has determined this is the diligence due under the Act. Because the identification of the Medicaid recipients receiving care at a particular facility is undeniably an essential element of an inspection, we find the Secretary's determination reasonable. Moreover, under the "technical failings" element of the exception, failures due to circumstances within the state's control can justify an exemption from the penalty. *See* 42 C.F.R. § 456.653(b). We are not convinced the regulation is unduly restrictive.

## IV. *Assessment of the Penalty in this Case*

■ We find the penalty proper in this case. The pertinent facts found by the DAB are either undisputed or supported by substantial evidence in the record. *See Minnesota ex rel. Noot v. Heckler*, 718 F.2d 852, 860 (8th Cir.1983), *aff'd sub nom.*

*Connecticut Dep't of Income Maintenance v. Heckler*, 471 U.S. 524, 105 S.Ct. 2210, 85 L.Ed.2d 577 (1985). CDSS attempted to inspect the Center by reviewing those patients the Center identified as Medicaid recipients. The Center failed to identify three recipients, and CDSS consequently failed to review the care received by these individuals. CDSS admits these facts and we already have held as a matter of law that failure to review even a single patient constitutes a failure to inspect that facility. Because a failure to inspect indisputably supports the imposition of the statutory penalty, 42 U.S.C. § 1396b(g)(5), the DAB's finding of a prima facie case for imposition of the penalty was correct.

The DAB properly concluded that because CDSS's reliance on the facility's census of Medicaid patients was within CDSS's control and did not qualify as a technical failing, the Secretary was permitted to assess the statutory penalty. *See* 42 C.F.R. § 456.653. Further, CDSS does not contest the DAB's finding that this reliance was a matter within CDSS's control.[4] Rather, CDSS contends Congress intended to allow a state to rely on a facility's census of its Medicaid to determine which patients must be reviewed during an inspection of that facility. Yet the entire purpose of utilization control inspections is to ensure facilities do not provide—and charge the federal government for—inappropriate medical care. *See generally* H.R.Rep. No. 231, 92d Cong., 2d. Sess. (1972), *reprinted in* 1972 U.S.Code Cong. & Admin.News 4989, 5092. If states are permitted to rely on a facility's census, a facility providing inappropriate care will be encouraged simply not to list those patients. Thus, the recipients most in need of review would go unreviewed. This is clearly contrary to the underlying purposes of the Act.

---

4. CDSS makes a "slippery slope" argument in an attempt to discredit the DAB finding that because CDSS relied on the Center's census of Medicaid patients, CDSS's failure to review each recipient was a circumstance within CDSS's control. CDSS asserts we should disregard the DAB's finding that reliance on the Center's patient list was within CDSS's control. This finding, CDSS claims, is "too rigid" because it implies that a failure to identify can never qualify for the "good faith and due diligence" exception. We fail to see the logic in this argument, and dismiss it summarily.

We REVERSE the district court's award of summary judgment in favor of CDSS and its refusal to enter judgment in favor of the Secretary. We REMAND for further proceedings consistent with this opinion.