**STATE OF ARKANSAS, by its director of the Department of Human Services, Dr. Terry YAMAUCHI, Appellee,**

v.

**Louis W. SULLIVAN, M.D., in his official capacity as Secretary of the Department of Health and Human Services, and The United States Department of Health and Human Services, Appellants.**

No. 90–3100.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1991.

Decided July 6, 1992.

Kermit Fonteno, Dallas, Tex., argued (Stuart M. Gerson, Charles A. Banks and Kermit Fonteno, on the brief) for appellants.

Breck G. Hopkins, Little Rock, Ark., argued and on the brief, for appellee.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and HUNTER,[*] Senior District Judge.

McMILLIAN, Circuit Judge.

Louis W. Sullivan, Secretary of the Department of Health and Human Services (Secretary), appeals from a final order entered in the District Court [1] for the Eastern District of Arkansas reversing a decision of the Departmental Appeals Board (Board) and permanently enjoining the Secretary from undertaking any steps to recover certain disallowed funds paid to the state of Arkansas under the Medicaid program. *Arkansas v. Sullivan,* Civil No. LR–C–88–793 1990 WL 382662 (E.D.Ark. Oct. 18, 1990) (memorandum opinion and order). For reversal the Secretary argues the district court erred in holding that the regulation at issue was unreasonable. For the reasons discussed below, we affirm the order of the district court.

The present case involves Medicaid funding; Medicaid is a joint federal-state program in which the federal government reimburses participating states for a percentage of the cost of providing medical services to the poor. 42 U.S.C. § 1396. To be eligible for Medicaid funds, the state must comply with certain federal standards and adopt a system to monitor the utilization of the Medicaid program. *Id.* § 1396a. At issue in the present case is the requirement that participating states have an effective utilization control program in which the

---

[*] The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

medical care provided to each Medicaid patient receiving long-term care in institutional settings "is reviewed and evaluated at least annually by independent professional review teams." *Id.* § 1396b(g)(1) (hospitals, intermediate care facilities, skilled nursing facilities, mental hospitals). In order to avoid a "penalty" reduction in federal Medicaid reimbursement, the state must demonstrate, for every fiscal quarter for which reimbursement is requested, that the state has reviewed the care provided to each patient within the last year. The annual review is intended to prevent the warehousing of Medicaid patients and includes an evaluation of the adequacy of services provided and the necessity and desirability of the patient's continued placement in that facility and, for intermediate care facilities, personal contact with and observation of the patient and review of each patient's medical record. 42 C.F.R. § 456.608(a)(1), (2). The Secretary verifies the state's quarterly report by conducting sample on-site surveys of state institutions. The Secretary was required to substantially reduce federal Medicaid reimbursement if the state failed to review any long-term Medicaid patient in the last year.

In 1977, as part of the Medicare–Medicaid Anti–Fraud and Abuse Amendments of 1977, Congress revised the formula for reducing Medicaid reimbursement for incomplete state reports and added two exceptions to the annual review requirement. 42 U.S.C. § 1396b(g)(4)(B). The exceptions were intended to allow states to avoid what Congress viewed as "punitive" reductions in the level of federal Medicaid reimbursement when the state failed to review every institution subject to review within the last year. *See* H.R.Rep. No. 393, 95th Cong., 1st Sess. 85 (1977), *reprinted in* 1977 U.S.C.C.A.N. 3039, 3088. The first exception applies if the state demonstrates that it completed on-site inspections during the last year in at least 98% of all facilities requiring review and in all facilities with 200 or more certified Medicaid beds and exercised "good faith and due diligence" in attempting to inspect all Medicaid patients. 42 U.S.C. § 1396b(g)(4)(B). The second exception ap-

plies if the state's failure to conduct the required inspection was due to "failings of a technical nature only." *Id.* The second exception is not at issue in the present case.

In 1979 the Secretary promulgated regulations implementing these exceptions. 42 C.F.R. § 456.653. The regulation at issue in the present case provides that the good faith and due diligence exception is available only if the state would have completed reviews of all facilities requiring review "but for events beyond its control which it could not have reasonably anticipated." *Id.* § 456.653(a)(3). The Secretary has interpreted "good faith and due diligence" to mean situations in which the state has attempted to perform reviews but was prevented from doing so by extraordinary circumstances beyond its control, for example, if "a review team is prevented from entering a facility due to quarantine or court order," or "severe and unpredictable weather disturbances." 44 Fed.Reg. 56,-333, 56,336 (1979).

The facts in the present case are not disputed. The state has 94 intermediate care facilities; none of these facilities has 200 or more Medicaid beds. In March 1988 the Secretary notified the state that it had failed to make a satisfactory showing for the last three quarters of 1987 and disallowed the state $212,613.94 in federal Medicaid reimbursement funds. The Secretary determined that the state inspection teams had failed to review one patient in the Crestpark Retirement Inn and one patient in the Nashville Nursing Home. The state appealed the disallowance to the Board. The Secretary acknowledged before the Board that it had erred as to the patient in the Crestpark facility. The Board found that the state had failed to review the patient in the Nashville facility and had failed to exercise "good faith and due diligence" in attempting to complete the required inspections so that the good faith and due diligence exception did not apply. The Board reduced the amount of the disallowance to $33,879.03.

The state filed a petition for review of the decision of the Board in federal district court. The state conceded that it had

failed to review one patient in one facility due to "human error" and argued that the Secretary's regulation restricting the good faith and due diligence exception to extraordinary circumstances beyond the state's control was an unreasonable interpretation of the statute. The district court agreed with the state's arguments and reversed the decision of the Board and permanently enjoined the Secretary from seeking to recover the disallowance. *Arkansas v. Sullivan,* slip op. at 10–11. The district court found that the regulation was more restrictive than, and thus inconsistent with, the statute. *Id.* at 7–8, *citing Delaware Division of Health & Social Services v. United States Dep't of Health & Human Services,* 665 F.Supp. 1104, 1127–28 (D.Del. 1987) (*Delaware*). The district court noted that the state had inadvertently failed to review only one patient and concluded that virtually 100% compliance satisfied the statute. Slip op. at 10. This appeal followed.

■ The Secretary argues that the regulation is a reasonable interpretation of the statute. The Secretary notes that a strict standard of care requiring the state to do everything within its control to conduct a complete review is consistent with the statutory provisions that require the state to annually review the care received by each patient in every covered facility. 42 U.S.C. § 1396b(g)(1) (cross-reference to 42 U.S.C. § 1396a(a)(26), (31)). The Secretary further argues that a strict standard of care is consistent with the intent of Congress to require a complete review annually in order to prevent the warehousing of Medicaid patients.

The statute provides that a less than complete review may nonetheless be considered satisfactory if the state "has exercised good faith and due diligence in attempting to conduct such inspection." 42 U.S.C. § 1396b(g)(4)(B). Because the statute does not define "good faith and due diligence," the statute must be considered to be ambiguous or silent on this issue, and we must determine whether the Secretary's interpretation of "good faith and due diligence" in the regulation is reasonable. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S.

837, 844–45, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 (1984).

We agree with the district court that the regulation is an impermissibly restrictive and thus unreasonable interpretation of the statute. The regulation specifies an objective standard—"events beyond its control." The legislative history indicates, however, that Congress expressly rejected an objective standard. Although the House bill proposed a good faith standard for compliance and the Senate bill would have allowed the Secretary to waive noncompliance only if the noncompliance was "due to circumstances beyond control of the State," the conference agreement adopted the good faith standard of the House bill and rejected the reference in the Senate bill to "circumstances beyond control of the State." H.R.Conf.Rep. No. 673, 95th Cong., 1st Sess. 48 (1977), *reprinted in* 1977 U.S.C.C.A.N. 3039, 3122. The Conference Report explained that "[i]f a facility is not reviewed, there will be a reduction in matching unless the Secretary finds there was a *good faith attempt* to review the institution, and there is no evidence that any institution, or kind or type of institution, is *deliberately* not reviewed." *Id.* (emphasis added). "By using the term 'attempt' and by mandating that facilities are not 'deliberately' unreviewed, [Congress] plainly directed the Secretary to employ a subjective standard that focuses on the State's good faith." *Delaware,* 665 F.Supp. at 1124; *accord Pennsylvania Dep't of Public Welfare v. United States Dep't of Health & Human Services,* 928 F.2d 1378, 1384–87 (3d Cir.1991) (*Pennsylvania*) (including extensive discussion of statutory and regulatory background). *But see Colorado Dep't of Social Services v. Department of Health & Human Services,* 928 F.2d 961, 963–65 (10th Cir.) (*Colorado*) (holding regulation is reasonable), *cert. denied,* —— U.S. ——, 112 S.Ct. 85, 116 L.Ed.2d 58 (1991). The Secretary may not by regulation reinsert into the statute the deleted "circumstances beyond the control of the State" language.

■ We agree with the district court that the state acted in good faith because it made a sincere effort to review the medical care of every Medicaid patient and did not

deliberately fail to inspect any patient or covered facility. Slip op. at 10. We also agree with the district court that the state acted with due diligence even though its review overlooked one Medicaid patient in one facility. *Id.* We think overlooking one patient amounts to a *de minimis* noncompliance with the annual review requirement. "[D]ue diligence cannot be read to require perfection, because otherwise the [good faith and due diligence] exception to total review would be meaningless...." *Pennsylvania,* 928 F.2d at 1387 (two patients missed); *accord Delaware,* 665 F.Supp. at 1128 (four patients missed); *see also* H.R.Rep. No. 393 at 85, *reprinted in* 1977 U.S.C.C.A.N. at 3088 (good faith and due diligence exception added because Secretary had penalized states for failure to review "only two or three homes out of hundreds of homes subject to review within the annual time limit"). There is no indication in the present case that the state's failure to review this single Medicaid patient was attributable to the state's failure to establish a reliable system of review. *Cf. Colorado,* 928 F.2d at 965 (state cannot rely on a facility's census of Medicaid recipients in conducting required annual review); *Johnson v. Sullivan,* 758 F.Supp. 1496, 1502 (N.D.Ga.1991) (same).

Accordingly, we affirm the order of the district court.